# Kramer & Rahm's Appeal.

*Reciprocal Rights and Duties of Creditors and Sureties.—Marshalling of Securities.*

1. When a surety or person standing in the situation of a surety for the payment of a debt, recovers a security for his indemnity and to discharge such indebtedness, the principal creditor is entitled to the full benefit of the security, even though he did not act upon its credit in the first instance, nor know of its existence.

2. A debtor gave to his acceptor a judgment to secure him for his acceptances, which was to be cancelled and given back upon receipt of pig metal and blooms sufficient to liquidate the account for which it had been given. These acceptances passed by endorsement into the hands of third parties, a portion of these remaining unpaid in the hands of three firms. To two of these firms a portion of this judgment was assigned by the holder as collateral security for the drafts held by them respectively. They enforced the judgment at their own expense, and claimed to be fully paid out of the money made by it, leaving a small balance for the other firm, who had taken no part in the litigation. *Held,* that the security of the judgment attached to all the unpaid acceptances alike, and that the holders were entitled to a *pro rata* share of the fund in court, but that the litigant parties should receive, in addition to their dividend, a fair share of the costs and expenses of the litigation, to be paid out of the share of the other party.

3. The court will require such third firm to exhaust whatever independent securities they may have for their debt, and will suspend the distribution of their *pro rata* share until such securities are exhausted or shown to be worthless. If nothing be realized, they will be permitted to take out of court the whole of their share: if any part of their debt be obtained from the securities, so much out, as, with what they have received, will make up the amount of their *pro rata* share in the judgment, in which case the balance of the fund remaining will be distributed, *pro rata,* to the other parties interested in the fund.

This was an appeal by Kramer & Rahm and Sellers & Co., from the decree of the Common Pleas of *Blair county,* confirming the report of auditors appointed to distribute the money in court, made on the sale of certain personal property attached under a judgment of Henry S. King, against Elias Baker.

The case was this: Henry S. King, of Pittsburgh, was engaged in the commission business, and had for some time been receiving and selling on commission, pig-iron metal and blooms, consigned to him by Elias Baker. On the credit of these consignments, King was in the habit of accepting drafts for large amounts, drawn on him by Baker, which acceptances were immediately passed over to other parties by Baker's endorsement.

On adjusting their accounts, a balance was found to be due

from Baker, who, on the 13th of November 1857, executed and delivered to King his judgment-note for $10,500, payable in four months. This judgment was entered up by King, who, on the same day, delivered to Baker the following paper:—

> " Pittsburgh, November 13, 1857.
> " This is to certify that Elias Baker has given his judgment-note, dated November 13, at four months, for $10,500, which I am to hold as security for the amount of my account against him, it being understood and agreed upon, that the said Baker is to deliver to me in Pittsburgh, before the maturity of the judgment-note, pig metal and blooms sufficient to liquidate the said account, which blooms and pig metal are to be sold by Henry S. King, on commission, and the proceeds to be applied to the payment of said account. It is also agreed that when the said Baker complies with the above conditions to the satisfaction of said King, that the above judgment-note is to be cancelled and given back to the said Baker.
> (Signed,)      " HENRY S. KING."

On the 18th of March 1858, an exemplification of the record of this judgment was entered in the District Court of Allegheny county, and an execution-attachment issued thereon, under which a large quantity of iron belonging to the defendant, in the possession of Nimick & Co., was attached.

In the mean time, Baker had taken up a large amount of these outstanding acceptances, leaving unpaid, in the hands of Kramer & Rahm about $7000, in the hands of Sellers & Co. about $2500, and with Bryan, Gardner & Co. about $4000.

On the 4th of May 1858, King assigned to Kramer & Rahm $7213.56, and to J. Sellers & Co. $2500.43, of this judgment, by whom the contest in relation to the execution-attachment was carried on in the District Court of Allegheny, and in the Supreme Court. On the 22d, 1859, in accordance with an order of the District Court of Allegheny county, a *fieri facias* was issued for the sale of the iron that had been attached as the property of Baker, the defendant; whereupon, to wit, on the 24th of January 1859, Baker paid into the Common Pleas of Blair county, the amount of the original judgment, with interest and costs, and filed a petition in which he set forth the giving of the judgment, as above stated,—the certificate received by him from King,—the fact that the judgment was given by him to secure certain bills of exchange accepted by King, of which he, Baker, had paid $1400, leaving unpaid the sums above named, in the hands of Kramer & Rahm, Sellers & Co., and Bryan, Gardner & Co.,—that King had in his possession upwards of $3000 belonging to the petitioner, which he had not appropriated to the pay-

[Kramer & Rahm's Appeal.]

ment of any of said bills, which sum should have been credited on said judgment, and which should now be divided, *pro rata*, among the holders of the said acceptances,—and concluding with a prayer for the appointment of an auditor to distribute the money according to equity, and report the facts to court.

In his answer, King presented a copy of his account with Baker, showing a large balance due above the judgment, averring that Baker never shipped any iron to him, after giving the judgment, and obtaining large advances upon the faith of his promise ; that, at the date of the judgment, Baker was indebted to him for commissions, &c., and had given the judgment for his individual security for indebtedness then due, and advances then made, in case he should fail to deliver the iron as agreed on, and not for the protection of the bill-holders ; that he had provided for all outstanding bills, by assigning enough of the judgment to Kramer & Rahm and Sellers & Co., to pay them, leaving about $800 which he agreed should go to Bryan, Gardner & Co. ; that the balance of their claim he had secured by giving his own notes and mortgage, in Bedford county, with consent of their counsel ; that the assignment to Kramer & Rahm and Sellers & Co., was *bonâ fide* and for full value, and that no one had a right to a *pro rata* distribution of the proceeds : denying also that he had $3000 of Baker's money, and asserting that everything which he received from Baker had been faithfully applied to his account, leaving due from Baker $1207.49 more than the judgment, for which he had no security.   .

On the 31st of January 1859, Kramer & Rahm and Sellers & Co. appeared in court, and moved for leave to take out of the money paid, the sums severally assigned.   The court refused to allow this, but appointed auditors to make distribution.   Their report was filed April 25th 1859, distributing, *pro rata*, the money in court amongst the holders of these acceptances, to wit, Kramer & Rahm, Sellers & Co., and Bryan, Gardner & Co., paying to each $76\frac{33}{100}$ per cent. of their claims.

On the 29th of April 1859, the court ordered the judgment against Baker to be satisfied.   May 6th, exceptions to the report were filed by the attorney of King, Kramer & Rahm, and Sellers & Co. ; but the court overruled the exceptions, and confirmed the report, whereupon a writ of error was sued out, and an appeal taken from the decree of the court confirming the auditor's report.

The errors assigned on the appeal were, that the court below erred in overruling the following exceptions to the auditors' report, viz. :—

1. That, the judgment-note being absolute on its face (and though conditional, it became absolute by the failure of the defendant to comply with the alternative mentioned), and having

[Kramer & Rahm's Appeal.]

been assigned *bonâ fide*, and of record, the assignees of the judgment are entitled to the full proceeds thereof, and so the auditors should have reported.

2. The auditors should not have appropriated to Bryan, Gardner & Co. any of the money in court, except the surplus that might remain after the payment of Kramer & Rahm and F. Sellers & Co. in full.

3. There was nothing in the history of the case, or in the evidence adduced, to justify the auditors in deciding that King held the judgment in trust for any person or persons.

4. The auditors should not have decided in favour of a *pro rata* distribution of the fund in court.

5. The auditors should have decided that Kramer & Rahm and F. Sellers & Co. are entitled to take of the money in court sufficient to satisfy their respective assignments, with interest from the date of said assignments.

6. The expenses of the audit should have been charged to Elias Baker, the defendant, the audit having been raised by him unnecessarily and against the protest of Kramer & Rahm and F. Sellers & Co.; they having applied to court for permission to take out of court the amounts due them, without a reference to auditors.

7. The auditors erred in not appropriating the money to the assignees of the judgment.

In deciding that because the judgment and mortgage in Bedford county are independent securities of Bryan, Gardner & Co., and not as available as the fund in court, the law of marshalling securities does not apply. In refusing to turn Bryan, Gardner & Co. over to their independent securities in the first instance, and in directing that "that part of the fund appropriated by the auditors to Bryan, Gardner & Co. be deposited by the prothonotary with that firm pending any further controversy respecting said fund."

On the writ of error the errors assigned were as follows:—

1. The court erred in considering the money as having been paid into court.

2. In refusing permission to the assignees of the judgment to take their money out of the hands of the officers of the court; and

3. In ordering the judgment to be marked satisfied.

*Jas. H. Hopkins* and *E. Hammond*, for plaintiff in error and appellants.—There was no evidence going to show that this was a trust judgment; the receipt of King, which is relied on for this purpose, shows that it was for his own protection solely, in which no other person had any interest, except with his consent.

The rule by which the assignee of a judgment is bound by

[Kramer & Rahm's Appeal.]

prior equities of the obligor does not apply here, for there were no prior equities. Baker had no defence. If the appellees had any equity it is unknown to them. If Baker knew of any he suppressed it, and allowed appellants to acquire a right to it, on which they relied until Baker and King became insolvent. Baker cannot now set up this secret trust for them to the injury of the assignees. His affidavit is not evidence : Hoar v. Mulvy, 1 Binn. 145.

Even if the theory of the other side were true, they have no right to a *pro rata* distribution. They can demand no subrogation as sureties of Baker, for he is still indebted to King : Bank of Pennsylvania v. Potins, 10 Watts 148 ; Kyner v. Kyner, 6 Watts 22. It would work injury to others if allowed : Erb's Appeal, 2 P. R. 296 ; Zigler v. Lang, 2 Watts 206 ; McGinness's Appeal, 4 Harris 448.

In addition to this, Bryan, Gardner & Co. had another security to which the appellants could not resort, to wit, the judgment and mortgage against King in Bedford county. The securities need not be equally available to justify courts in marshalling them : 8 Vesey, Jr. 387. Where the equities are equal the law must prevail. Here the appellants have legal assignments of the judgment ; the law also rewards the vigilant.

As to the errors assigned on the writ, they argued—

1. There was a judgment and a payment of it, which estopped the defendant from interfering with the disposition of the money. On the application of the plaintiffs' assignees (the use plaintiffs), it should have been paid to them. The defendant would thereby have been relieved : Humphreys v. Rawn, 8 Watts 70 ; Commonwealth v. Lightner, 9 W. & S. 118 ; Irish v. Johnston, 1 Jones 483.

2. The court had no right to mark the judgment satisfied until it was paid to plaintiffs. A deposit with the prothonotary is not payment : Baer v. Kistler, 4 R. 364 ; Tompkins *et al. v.* Woodford, 1 B. 156 ; Wells v. Baird, 3 Barr 351 ; Baldy v. Brady, 3 Harris 103 ; Goepp's Appeal, 3 Harris 427.

*R. A. McMurtrie*, for Bryan, Gardner & Co.—As to the writ of error : Bryan, Gardner & Co. were equitable assignees of this judgment of King. It was given to secure his account against Baker, which consisted of unpaid acceptances in the hands of the parties to whom the proceeds were distributed *pro rata* by the auditors. Baker had an interest in having a portion distributed to Bryan, Gardner & Co., so as to relieve him from the judgment which he had given in Bedford for his creditors, among whom was this firm. Both Baker, and Bryan, Gardner & Co., were claimants as well as the parties appellant ; and the money being in court, the refusal to allow Kramer & Rahm and Sellers

& Co. to take out any portion until the controversy was settled was very proper.

The money was paid into court upon petition and affidavit of defendant, which payment was recognised and affirmed by a motion to invest from the other side.

As to the appeal, it was replied that the judgment was a security from a principal to his surety, and as Bryan, Gardner & Co. were creditors of King in a portion of the debt which it was given to secure, they have an interest in the security : Erb's Appeal, 2 P. R. 296 ; Baldman's Estate, 4 Barr 248 ; Hines *v.* Barnitz, 8 Watts 39 ; Foster *v.* Fox, 4 W. & S. 92 ; 2 Penna. Rep. 296 ; Moore's Appeal, 7 W. & S. 298 ; 1 Paige 329 ; 9 Paige 432.

An assignee of a bond takes it subject to the equities of the original parties : 8 W. & S. 318 ; 3 Barr 140.

Courts of equity regard all debts without reference to their dignity or priority : Story's Eq. 64.

The appellees are not bound to resort to the fund in Bedford, which may prove insufficient ; besides, those are only collateral securities which they are not bound to enforce : 1 Grant's Cases 397.

If the appellants are injured by the distribution of a portion of this fund to the appellees, they can be subrogated to their rights in the Bedford security : 6 Watts 221 ; 1 Bright. Eq. 183.

The case was reargued by *Hopkins* for appellant, and *T. E. Franklin* for appellees, in which the same points were sustained by the same and additional authorities.

The opinion of the court was delivered, October 3d 1860, by

Thompson, J.—In Curtis *v.* Taylor & Allen, 9 Paige 432, Chancellor Walworth asserted and sustained by many authorities, the equitable principle " that where a surety or a person standing in the situation of a surety for the payment of a debt, receives a security for his indemnity, and to discharge such indebtedness, the principal creditor is, in equity, entitled to the full benefit of that security. And it makes no difference, that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence." Maure *v.* Harrison, 1 Eq. Cas. Abr. 1692, is to the same effect. So also is Heath *v.* Hand, 1 Paige 329 ; Paris *v.* Hulott, 26 Vermont Rep. 308 ; Ohio Life Ins. Co. *v.* Ledyard, 8 Mav. Rep. 866 ; Branch Bank of Mobile *v.* Robertson, 19 Ala. Rep. 798 ; Clarke *v.* Eby, 2 Sandf. Rep. 166 ; Ten Eyck *v.* Holmes, 3 Sandf. C. R. 428. So in Cornwell's Appeal, 7 W. & S. 305, Justice Kennedy announces the same rule, saying " it is a well-established principle in equity that a creditor is entitled to all the securities taken by

[Kramer & Rahm's Appeal.]

the surety of his debtor, either for the purpose of securing the payment of the debt to the creditor, or for the purpose of indemnifying himself." To the same purpose are Erb's Appeal, 2 Penna. Rep. 296; Hines v. Barnitz, 8 Watts 39; Carman v. Noble, 9 Barr 366; Hancock's Appeal, 10 Casey 155. The authorities place the principle upon the ground that as the security is a trust created for the better securing of the debt, it attaches to it, and hence it is that it may be made available by the creditor, although unknown to him at the time of the purchase of the security, for which it may have been given as an indemnity. The effect of such a transaction is the placing of means in the hands of the surety by the principal debtor to meet liability on account of his contract of suretyship. It is consequently a trust for that specific purpose, and equity will control the legal title to it in the hands of the surety, so that it may be applied to the object intended, viz. the payment of the debt to the holder.

Did King, who, it clearly appears, was an accommodation acceptor for Baker, stand in the "situation of a surety," as was said by the chancellor in Curtis v. Taylor & Allen? As between him and Baker, he certainly did. As between them, he was not the principal debtor, although by the law merchant he would be so to bonâ fide holders of the acceptance. But this would not change his relative position to Baker. In his hands and in the hands of assignees not bonâ fide and for value, the indemnity afforded by the judgment on the note of 13th November 1857 would be applicable to the payment of the acceptances. This was the trust on which it was given, as King in his receipt for it of the same date says, "to hold as security for the amount of my account against him." There is no dispute but that the acceptances of Kramer & Rahm, F. Sellers & Co., and Bryan, Gardner & Co., together with other acceptances afterwards taken up by Baker, and some items of commissions and expenses, constituted King's account for which the note stood as security. The indemnity was not to apply in any order of priority to parts of the account: it attached to it all and every part alike. The acceptances went of course, as they were intended to do, into other hands, and the security pledged by the principal debtor for the payment must go to the extinction of debts created by them so far as they remain unpaid by Baker, or the principle asserted in the outset of this opinion—that when a surety for the payment of a debt receives a security for his indemnity, the principal creditor is in equity entitled to the full benefit of that security—will be subverted, the security still remaining within the reach of equity, as will be seen hereafter. There are many cases in the books, of the application of this doctrine to cases of surety strictly so. But that it cannot be supposed to be limited and controlled by the mere form of the transaction, is apparent from the remarks

of the chancellor in Curtis *v.* Taylor & Allen, by the qualified expression of " standing in a situation of a surety." The case of Heath *v.* Hand *et al.*, 1 Paige 329, is a case of the direct application of the principle to a transaction like the present. A judgment had been given to secure advances and acceptances. The holders of the indemnity assigned it to one of their own personal creditors for anterior responsibilities incurred for them, but on a bill being filed by the defendant in the judgment (the party giving it as a security against acceptances made for his benefit), the collection of the judgment by the assignee was restrained, and the proceeds directed to be applied to the payment of the bills accepted by the assignees ; the chancellor declaring that " to that extent the holders of these notes and drafts accepted and endorsed by Hand and Kenyon have an equitable interest in the judgment (Bank of Auburn *v.* Throp, 18 John. Rep. 405), which being prior to the assignment to Lightbody, must prevail." So also to the same effect is Eastman *v.* Foster, 8 Metcalf 19. These authorities, and many others might be added, show clearly the application of the principle to acceptors and endorsers in favour of creditors as well as cases of surety in form. The case of Heath *v.* Hand *et al.* is also authority for another point in this case, if authority be needed ; that the assignment of the judgment for an antecedent debt or liability did not constitute the assignee a purchaser for value. See also Clark *v.* Ely, 2 Sandf. C. R. 166, and the citation of authorities therein in the affirmation of the principle by the assistant vice-chancellor of the 1st circuit of the state of New-York.

These principles established, how stands the case in hand ? Baker secured King's account to the extent of the judgment-note of $10,500, payable four months after date ; to be cancelled on the delivery of pig metal and blooms to the amount of it, within that time, to the latter at Pittsburgh. This metal he never did deliver. The judgment-note therefore remained as security for King's account. On March 5th 1858, judgment was entered in favour of King on the judgment-note. Previously thereto, King had accepted all the bills which constitute the claims of Kramer & Rahm, F. Sellers & Co., and Bryan, Gardner & Co., together with other notes not necessary to be mentioned. These acceptances with some items of expenses and commissions, constituted King's account, and it cannot be doubted but that if he had paid them himself, the judgment would have stood good to him as security from which to reimburse himself. He did not pay any of the bills in the hands of the holders named, but on May 4, 1858, he assigned to Kramer & Rahm $7513.50 as collateral "security" for the payment of their drafts, and to Sellers & Co. $2501.44, also as collateral security for the payment of theirs. These assignments would amount to their respective claims in

full, leaving seven or eight hundred dollars, which King says he agreed should go to Bryan, Gardner & Co. Kramer & Rahm and F. Sellers & Co. have at considerable expense enforced the payment of the judgment by Baker, and they claim, that, by virtue of this and their assignments from King, they are entitled to receive their whole claim out of the indemnity in exclusion of Bryan, Gardner & Co., excepting as to the balance of the judgment after paying them.

The auditors and the court below were of a different opinion, and, with the exception of certain modifications hereinafter to be noticed, we think they were right. As already indicated, the judgment-note was given by the principal debtor to his accommodation acceptor, a party standing in the situation of a surety for him, and it was for the purpose of saving him harmless; a trust was thereby created in favour of him, and, upon the principle already stated, in favour of the holders of the acceptances: 26 Vermont Rep. 308; 8 Metcalf 20. If a trust was thus created to secure the debt, it necessarily attached to the debt and will go in satisfaction of it in default of payment otherwise, unless divested by a *bonâ fide* assignment for value and without notice of its character. But this element does not exist in this case. The assignment was not, in the legal sense of the term, *bonâ fide*. It was merely as "collateral" security for the payment of the drafts for which it was given as security in the first place. No present value was given or securities parted with, and for this reason, it remained subject to the equities of others interested, just as if no assignment had been made: Clark *v.* Ely *et al.*, *supra*, and cases there cited. Under these circumstances, the assignment had no effect on the relative rights of the parties interested whatever. They stand as they did at the creation of the trust, their rights neither impaired nor strengthened by the act of the trustee. Equality is equity; and as the judgment was for the security of the entire account of King, consisting of accommodation acceptances made or to be made, we think the holders of the acceptances are entitled to it, and equally to a *pro rata* share of the amount raised from the original debtor.

The maxim "*prior est in tempore, potior est in jure*," is strictly a legal maxim. In a case like the present, it cannot be allowed the effect contended for, because the assignment was not a sale for value, but a pledge with notice, or an opportunity to know by inquiring the true character and purpose of the judgment assigned. It is with the equities of the parties, and not with legal rights, we are dealing.

The argument of the appellants, that if metal had been delivered as agreed, it would have extinguished the bond and King would have been obliged to give it up to Baker, and that the money received from the sale of the metal could then have been

disposed of by King, as he pleased, in payment of the accept-
ances, in any order he might choose, and that equity could not
have compelled a *pro rata* distribution under such circumstances,
proves nothing against the principle asserted, even if true; for
we deal with a different state of facts—with a security that
equity can follow—a trust property; and will follow and appro-
priate it in accordance with the trust. The force of the proposi-
tion lies in the difficulty assumed of following and identifying
the money substituted in lieu of the judgment, and not in the
fact that equity would not treat it precisely in the same way as
the judgment, if it had come into court for distribution. The
argument does not disprove the principle, but only shows the diffi-
culty of its application under a different state of facts.

Again it is contended that Bryan, Gardner & Co. cannot com-
pel this distribution against the claimants under King until they
do equity towards King, who, it is alleged, has a claim for that
part of his account which consists of expenses and commissions.
It is enough to say that King himself claims nothing out of the
judgment. He assigned it all, as already noticed. His claim
on the fund is therefore extinguished, and Kramer & Rahm and
F. Sellers & Co. cannot now set it up to embarrass Bryan, Gardner
& Co., and as a shield for themselves.

It was urged that Bryan, Gardner & Co. took King's notes as
security for the payment of the bills held by them, and that they
were embraced in King's mortgage to Florence Kramer and
secured by it. · And also that the same debt was included in a
judgment confessed by Baker to Floyd for the use of certain
creditors. It is not easy to see how these facts, growing out of
the vigilance of Bryan, Gardner & Co., should destroy their
right to another and independent security. It wants a considera-
tion somewhere to establish the relinquishment of a right, but
none such exists here, nor did such vigilance injure the other
claimants. There is no pretence that either of these securities
was taken in satisfaction of Bryan, Gardner & Co.'s claim.
Their equity is not prejudiced, therefore by these considerations,
nor is there any better reason for holding them postponed by
their inaction in the litigation that Kramer & Rahm and Sellers
& Co. sustained. Their entire ignorance of the existence of the
security until the last moment, would not have prejudiced them,
as we have seen, if it turned out that the judgment was a secu-
rity for their claim, for they ought in the distribution to be
required to bear their share of the expenses of the litigation;
and, as the assets were equitable, to be distributed according to
equity, I see no reason why the distribution may not be made on
the principle of equality in this respect, and upon this principle
the auditors very properly acted, partially, at least, if not to the
full extent.

[Kramer & Rahm's Appeal.]

We do not, however, agree with the auditors in their treatment of the independent securities held by Bryan, Gardner & Co. They do not find them to be worthless, but propose that, in the event of their proving of value, Kramer & Rahm and F. Sellers & Co. may be subrogated to the rights of Bryan, Gardner & Co. in them, after the latter are satisfied. This does not comport with the equitable principle governing the case of a party having only one security, and another the same and an additional one. There equity, in a proper case, will require the latter to take his satisfaction out of the security which was not common to the latter, unless it trenched injuriously, in some way, upon the vested rights of the latter. We think that the rule should be applied in this case. That Bryan, Gardner & Co. should be required to exhaust their independent security in the first place, before taking any part of the fund out of court, or satisfy the court that they are worthless. This will enable the court to administer equity fully between the parties. Kramer & Rahm and F. Sellers & Co. may in the mean time be allowed to take out of court their *pro rata* of the proceeds of the judgment; and whether they shall be entitled to more will afterwards depend on how much, if anything, may be realized by Bryan, Gardner & Co. upon their securities. If nothing can be realized by them, or not enough to satisfy their claim, they will, in the first contingency, be entitled to take out their *pro rata* share of the judgment, and, in the second, so much out as, with what may have been received by them from their independent securities, will satisfy them in full, provided that does not exceed their *pro rata* share in the judgment. We see no other error in the decree.

And now, to wit, October 3d 1860, it is adjudged and decreed that there be paid and distributed of the fund in court to Kramer and Rahm the sum found by the auditor, $5635.20, together with such other sum out of the *pro rata* share of Bryan & Gardner as the court shall find to be their fair *pro rata* share of expenses and costs to be paid of the litigation to recover the said money, if not already fully accounted for in the auditor's report; and to F. Sellers & Co. the sum of $1974.55, the sum found by the auditor in their favour, together with their fair *pro rata* share of the costs and expenses of collection to be paid as aforesaid; the costs and expenses to be borne equally in proportion to the amount of their claims respectively; and that distribution to Bryan, Gardner & Co. be suspended until they shall have exhausted their other securities, after which distribution to them to be made upon the principles of this opinion if they shall not receive an amount sufficient to pay or

1 WR.—6

satisfy the acceptances of King as shown to be held by them before the auditor, and in case of full satisfaction by them from such other securities, then distribution to be made of the fund in court to Kramer & Rahm and F. Sellers & Co. in satisfaction of their claim. Each party to pay their own costs of this appeal.

LOWRIE, C. J., and WOODWARD, J., dissented.