## Warner's Appeal.

The report of an auditor in a case involving the appropriation of assets by the directors of an insolvent bank, to their own use, reviewed and sustained, upon the settled principle that the report of a careful auditor upon the facts, approved by an experienced judge, must be permitted to stand, until plain error is pointed out.

(Decided January 4, 1886.)

Appeal from the decree of the Common Pleas, No. 1, of Allegheny County confirming an auditor's report.  Affirmed.

This bill was filed by Henry Warner, as assignee of the Penn Bank, against the directors thereof, to compel them to deliver

Cited in Meyers v. Campbell, 59 N. J. L. 379, 35 Atl. 788, holding that securities belonging to the principal debtor and pledged by him to indemnify his surety will inure in equity to the benefit of his creditor.

Note.—See note to Messinger's Appeal (Pa.) 1 Cent. Rep. 126, 1 Atl. 260, for the effect of findings of fact by a master.  The same rules apply to the findings of auditors.  If there is sufficient evidence to sustain the finding, which has been approved by the court below, the appellate court will not reverse, except for manifest error.  Lowry's Estate, 6 Pa. Super. Ct. 143, 41 W. N. C. 348; Seibert's Estate, 4 Pa. Super. Ct. 514, 40 W. N. C. 278; Kedward v. Campbell, 166 Pa. 365, 31 Atl. 114; Coulston's Estate, 161 Pa. 151, 28 Atl. 1020; Baird v. Ford, 152 Pa. 637, 25 Atl. 879.  But, if there be no evidence to sustain the finding, it will be set aside.  Jacob's Appeal, 107 Pa. 137.

to him certain assets of the bank which it was alleged they had fraudulently converted to their own use.

The bank closed its doors on May 21, 1884, but assurances were given to the public that it was in good financial condition, and a committee was appointed to meet with representatives of other banks of the city to secure a sufficient amount of ready funds on the bills receivable to enable the bank to resume. The other banks would have nothing to do with the paper of the Penn Bank, but were willing to furnish the money on the directors' notes. The directors thereupon made their notes for $289,000, which were discounted and the money paid into the vaults of the bank. The board then passed a resolution directing the bank officers to assign to the directors bills receivable of the bank to the amount of $450,000, as collateral security for those notes.

The doors of the bank were opened, but, on May 26, they were again closed, and the bank was found to be utterly insolvent. The assignee alleged that the directors then took all the securities of the bank, including those that had been pledged to them as collateral, and, meeting at the office of Mr. Hutchinson, so manipulated the securities that they retained the best of them to the amount of about $450,000, a list of which was set out; and because of this fraudulent action on the part of the directors he claimed that he was entitled to recover these securities.

A cross bill was filed by the banks who discounted the notes of the directors, praying that the funds in the hands of the directors be applied to the liquidation of the notes discounted by them. A decree was entered in favor of the directors, and the assignee appealed.

*George Shiras, Jr.* and *D. T. Watson* for the discounting banks.

*D. F. Patterson, Boyd Crumrine, John Dalzell, Weir & Garrison,* and *Montooth Bros.* filed a brief on behalf of the creditors of the Penn Bank.

*A. M. Brown, S. A. McClung,* and *H. A. Miller,* for appellant.—The corporation not only represents itself, but also the interests of all the shareholders and creditors of the corporation; and the directors are its agents or trustees, and as such are bound to represent all the interests of the corporation and of its stock-

holders and creditors; and they occupy a position of trust and confidence to all. Taylor, Corp. § 612.

Every director of a company is bound, when his personal interests conflict with his duty to the shareholders, to perform his duty towards them at a sacrifice of his own interests. 2 Lindley, Partn. 590.

When a director or officer of a corporation deals with the corporation himself, or becomes a party to a contract with the company, his obligation to candor and fair dealing is increased in the precise degree that his representative character has given him power and control derived from the confidence reposed in him. Twin Lick Oil Co. v. Marbury, 91 U. S. 588, 23 L. ed. 329; Addison v. Lewis, 75 Va. 701–720. See Ashhurst's Appeal, 60 Pa. 314.

A director of a corporation may become its creditor and take security on its property, but he is not thereby devested of his responsibility as a director, nor the duties which as such he owed to the corporation; and he is bound to act in the utmost good faith throughout its transactions. Hallam v. Indianola Hotel Co. 56 Iowa, 178, 9 N. W. 111.

Directors cannot take advantage of their inside position to. obtain any personal advantage. Under such circumstances they may not only not avail themselves of their control over affairs of the corporation to oppress it, but they cannot make unrestricted use of legal means open to outside creditors. Taylor, Corp. § 634.

The burden of proof is upon the directors, and the presumptions are against them. Story, Agency, § 333; McDowell v. Rissell, 37 Pa. 169; notes to Fox v. Mackreth, 1 White & T. Lead. Cas. in Eq. 188, 212, etc.; Pom. Eq. Jur. §§ 955, 956, 1076, 1077.

The directors are agents of the corporation. Thompson, Liability of Officers of Corporations, 351.

It is the duty of the agent to keep the principal's property distinct from his own. "If he mixes it with his own, the whole will be taken, both at law and in equity, to be the property of the principal, until the agent puts the subject-matter under such circumstances that it may be distinguished as satisfactorily as it might have been before the unauthorized mixture on his part." Story, Eq. Jur. § 468; Story, Agency, § 205.

Courts of equity do not in these cases proceed upon the notion

that strict justice is done between the parties, but upon the ground that it is the only justice that can be done; and that it would be inequitable to suffer the fraud or negligence of the agent to prejudice the rights of his principal. Story, Eq. Jur. § 468.

In case of mingling, every doubtful circumstance will be construed unfavorably to the agent. Story, Agency, § 333.

"If A will wilfully intermix his corn or hay with that of B, or casts his gold into another's crucible, so that it becomes impossible to distinguish what belonged to A from what belonged to B, the whole belongs to B." 2 Kent, Com. 365; Hart v. Ten Eyck, 2 Johns. Ch. 62; Ryder v. Hathaway, 21 Pick. 298; Hesseltine v. Stockwell, 30 Me. 237, 50 Am. Dec. 627; Jenkins v. Steanka, 19 Wis. 126, 88 Am. Dec. 675; Lupton v. White, 15 Ves. Jr. 432; Panton v. Panton, cited in 15 Ves. Jr. 435; Story, Eq. Jur. § 468; Story, Agency, § 205.

*Knox & Reed, Thos. C. Lazear, Isaac Van Voorhis, Sol. Schoyer,* and *D. T. Watson,* for appellees.—The mere fact that, as part of the board, they did, in one sense, deal with themselves, would not defeat defendants' right to hold the collateral. Ashhurst's Appeal, 60 Pa. 314; Gordon v. Preston, 1 Watts, 388, 26 Am. Dec. 75; Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. ed. 329; Duncomb v. New York, H. & N. R. Co. 84 N. Y. 191.

If the appellant had made out a case of actual commingling, the weight of authority is against equity enforcing a forfeiture. 2 Kent, Com. 313; Bispham, Eq. § 181; Oil Creek R. Co. v. Atlantic & G. W. R. Co. 57 Pa. 65.

To relieve against forfeiture is one of the oldest and best-established functions of a court of equity. Pittsburg & C. R. Co. v. Mt. Pleasant & B. F. R. Co. 76 Pa. 490; Story, Eq. Jur. §§ 5, 1315.

Opinion by Mr. Justice Paxson:

Nearly all of the assignments of error in this case are to the finding of the learned auditor upon questions of fact. His findings were approved by the court below. The testimony occupies nearly 1,000 pages. The report of the auditor is elaborate and goes over the case very fully and carefully.

If there are any serious errors in his findings, they have not

been pointed out to us, and this is a condition precedent to our
taking up this vast mass of testimony for the purpose of review-
ing it.   The report of a careful auditor upon the facts approved
by an experienced judge must go for something.   They must be
permitted to stand until plain error is pointed out.

There is not much else in the case.   What little there is may
be considered in connection with the 9th, 10th, and 11th assign-
ments.

The 9th is as follows:   "The court below erred in overruling
plaintiff's 17th exception to the master's report, to wit: the mas-
ter erred in not recommending a decree requiring defendants to
deliver to plaintiff all of the notes in exhibit A now in their
possession, and to pay to him the proceeds of such as have been
collected by them."

The master has found, and the fact is not denied, that the de-
fendants below have possession of about $450,000 of the bills re-
ceivable of the bank, which they hold as indemnity for $289,000
of paper issued by them for the accommodation of the bank, and
which paper was discounted by other banks and brokers, and the
proceeds paid into the vaults of the Penn Bank.   This transac-
tion appears to have been done in entire good faith, and with the
hope and for the purpose of enabling the bank to resume payment
successfully.

There is nothing in the case to connect the directors, defend-
ants, with the great fraud by which this institution has been
wrecked.   They may have reposed too much confidence in the
officers of the bank, but they did not steal its money.   The case
itself does not raise any question of their negligence.

It is conceded that, when these securities were selected, set
apart, and handed over to the defendants, they took a good title
thereto.   But it is alleged that on the following Monday the said
securities were so mingled with other securities of the bank that
they could not be identified, and the doctrine of confusion of
goods was mooted to destroy the defendants' title to the notes.   It
is at least doubtful whether the doctrine referred to is applicable
to such a case, and, even if it were, the master has found no facts
to which it could be applied.   He has found that there was no
mingling whatever, and we think he is sustained by the evidence.

The securities passed over by the bank to the defendants to in-
demnify them for raising this loan of $289,000, inured in law to
the benefit of the other banks advancing the money.   This is

settled law. Kramer's Appeal, 37 Pa. 71; Rice's Appeal, 79 Pa. 168.

They are entitled to the full benefit of the securities. They have done no act which would justify a court of equity in forfeiting their rights.

Much stress was laid upon another point,—a number of small bills, called the "foreign bills," in some way were exchanged and are now in the list held by Mr. Hare for the defendants. They amount altogether to $2,460.47. How this occurred does not very clearly appear. They do not increase the amount set apart for defendants. Other notes were received therefor by the bank, which the master finds of equal value. He further finds that no one was injured by the exchange and no fraud was intended. We are asked to declare that these "foreign bills" at least are forfeited, and that they belong to, and must be returned to, the bank. But those who ask equity must do equity.

The bank received notes of equal value and amount in this exchange, and those notes must be returned before equity will interfere. It would be a harsh rule to deprive the creditor banks of a security upon which they practically loaned their money, for a mere blunder of this kind, for which they were in no way responsible, and occurring at a time when there was great excitement and confusion at the bank. Aside from this, the bank gets the benefit of these notes. They all go to pay its debts, and whatever surplus there may be after paying the notes for which they were specifically pledged will go to the assignee for the benefit of the bank's creditors.

The 11th assignment relates to the question of costs. The master and the court below put them on the fund realized on the bills specified in exhibit A, after the payment of the notes on which the defendants are liable. This was practically charging the costs upon the assigned estate, where its property belongs. If the bills in exhibit A should produce no surplus, the order as to costs can be modified by the court below so as to charge them directly upon the estate. There is no merit in this assignment.

The decree is affirmed and the appeal dismissed, at the costs of the appellants.