# In re Philadelphia Company for Guaranteeing Mortgages, Trustee. No. 1.

*Adams, Childs, McKaig & Lukens,* for Integrity Trust Company, trustee.

*C. Russell Phillips,* of *Montgomery & McCracken,* for Mortgage Service Co. of Philadelphia, operating trustee.

*Anthony H. Whitaker,* of *Morgan, Lewis & Bockius,* for bondholders' committee.

HEILIGMAN, J., June 26, 1939.—This case is before us on petition of Integrity Trust Company, successor trustee

to the Philadelphia Company under a mortgage executed by C. Vernon Turner, for an order directing the Philadelphia Company to turn over to plaintiff a bill of sale of · furniture in the Hotel Sylvania, Philadelphia. . . .

The position of the Philadelphia Company, before its removal as trustee, may be summarized as follows: (1) Trustee for the bondholders under the first mortgage of April 1, 1922 (hereafter referred to as the Turner mortgage) ; (2) guarantor of the issue of $1,500,000 of bonds secured by the Turner mortgage; and (3) guarantor of $150,000 out of $1,650,000 class "A" bonds secured by the first mortgage of March 1, 1927 (hereafter referred to as the Pennington mortgage).

The bill of sale in question was, it is conceded, intended to be taken by the Philadelphia Company not as trustee under the Turner mortgage, but in its individual corporate capacity, as collateral security against possible liability under its guaranty policies in connection with the Turner and Pennington mortgages. The only question, therefore, is whether, as a matter of law, such intention could be effectuated.

Plaintiff first contends that the bill of sale is of no effect since the hotel furniture intended to be conveyed thereby was included within the provisions of the Turner mortgage. This mortgage covered "all machinery, including engines, boilers, dynamos, elevators, steam and electric fixtures and appliances and all fixtures and other personal property generally or which may hereafter be placed in or about the said premises and appurtenant thereto". Clearly the hotel furniture can be included, if at all, only in the phrase "other personal property". It is well recognized that, under the doctrine of ejusdem generis, such general words must be confined to articles of the same type as those specifically mentioned. Under this rule, a similar descriptive clause in a mortgage has been held not to include furniture: The Real Estate-Land Title & Trust Co. v. Bankers Trust Co. of Phila., 104 Pa. Superior Ct. 493.

Plaintiff maintains that later cases have extended the definition of "fixtures" so as to bring hotel furniture within this term of the mortgage. The rule referred to, however, applies only to machinery and appliances necessary to the functioning of a complete *manufacturing establishment*. See Pennsylvania Chocolate Co., for use, v. Hershey Brothers (No. 1), 316 Pa. 292, 299. In Central Lithograph Co. v. Eatmor Chocolate Co. (No. 1), 316 Pa. 300, at page 307, it was said: "If a party makes a chattel a permanent part of a manufacturing plant, such chattel *by force of law* becomes a part of the real estate and of the freehold." See also Commonwealth Trust Co., etc., v. Harkins et al., 312 Pa. 402, 406-407. A hotel can hardly be called a "manufactory", "plant", or even "industrial establishment", as those words are generally understood. In the present state of the law, therefore, we should not be justified in extending this doctrine to include furniture in a hotel.

It is argued by counsel for the committee for the protection of holders of bonds guaranteed by the Philadelphia Company that, even if the Philadelphia Company received the bill of sale as security for its undertaking as guarantor, the principal creditors (the bondholders) have a right to be subrogated thereto, and the company must apply the security for their benefit. That this is the general rule is undenied, but defendant maintains that it applies only to security received from the debtor, not "to securities given to the surety by a third person or stranger to the contract": 25 R. C. L. p. 1334; see also 50 C. J. p. 228, and Hampton, Admr., et al. v. Phipps, 108 U. S. 260, 264, 266; and in the present case the Philadelphia Company received the bill of sale from the hotel company and not from either of the mortgagors, Turner or Pennington.

There is no doubt that, superficially, this is a correct description of the situation. However, "in a court of equity . . . substance is never sacrificed to form": McKeown's Estate, 263 Pa. 78, 84. It is obvious that, in

reality, the hotel company was the "principal debtor" and C. Vernon Turner was merely a straw man. The property was conveyed to Turner solely for the purpose of permitting him to execute the mortgage, and was immediately reconveyed, subject to the mortgage, to Samuel R. Blockson, who executed his own penal bond as collateral security for the bonds issued in connection with the Turner mortgage. Then Blockson conveyed the property to the hotel company, which, according to the agreement, and the minutes of the meeting of the board of directors of the hotel company . . . transferred all the authorized capital stock, 3,000 shares of common stock without par value, and 4,000 shares of preferred stock of $100 par value, full-paid to Blockson. In effect, therefore, Blockson owned the hotel company. Furthermore it is apparent that the Philadelphia Company looked to the hotel company or to Blockson, and not to Turner, for payments into the sinking fund under the Turner mortgage. The fourth stipulated fact refers to advancements by the Philadelphia Company to the bondholders of "certain interest payments which the *Hotel Sylvania Company* failed to make". The seventh fact states that "$46,967.29 had been paid *by the owner of the Sylvania Hotel* to the Philadelphia Company on account of the sum of $200,000 payable under the terms of the sinking fund provision". The eighth fact states that "the *Hotel Sylvania Company* . . . was unable to meet its sinking fund payments", and the tenth fact states that "the Philadelphia Company . . . refunded to the *Hotel Sylvania Company* the sum of $46,967.29 plus accumulated interest, which sum had theretofore been paid on account of the sinking fund". (Italics supplied.) At least as to sinking fund payments, therefore, the hotel company was undoubtedly the principal debtor. Consequently, although the Philadelphia Company received the bill of sale of furniture from the hotel company to indemnify it against possible liability on its guaranty policies, the principal creditors, i. e., the bondholders, have a right to be subrogated to this secu-

rity. That right may now be enforced by requiring the bill of sale to be turned over to plaintiff as successor trustee for bondholders under the Turner mortgage.

It is immaterial that the bondholders did not rely on the security of the furniture when purchasing the bonds, for, in applying the principle of subrogation stated above, "it makes no difference, that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence": Kramer & Rahm's Appeal, 37 Pa. 71, 76. See also Rice's Appeal, 79 Pa. 168, 206, and Williamson's Appeal, 94 Pa. 231, 237.

What has been stated above constitutes sufficient grounds for granting plaintiff's prayer. That our conclusion is inevitable is indicated by further reasons based on the position of the Philadelphia Company, not as guarantor of the bonds secured by the Turner mortgage, but as trustee for the bondholders under such mortgage.

Plaintiff contends that, by reason of the Philadelphia Company's position as trustee, and also by reason of certain conduct by it as trustee, the Philadelphia Company "cannot be heard to claim that a bill of sale from the debtor company covering the furniture in the hotel was taken by it not as trustee under the earlier (Turner) mortgage, but to indemnify it against its liability as guarantor". In other words, it is argued that, as a matter of law and equity, the Philadelphia Company must subordinate its self-interest as guarantor to the interests of the bondholders for whom it is trustee, and, therefore, apply the security which it received for its own benefit to the corpus of the trust, i. e., the mortgaged property.

Our attention has not been directed to any case in which this specific situation has arisen. The principles governing a trustee's duty of loyalty to cestuis que trustent, however, are so well known that brief reference to them will be sufficient.

"The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary": A. L. I. Restatement of Trusts §170(1).

"A trustee is in a fiduciary relation to the beneficiary and as to matters within the scope of the relation he is under a duty not to profit at the expense of the beneficiary and not to enter into competition with him without his consent. . . .": Restatement of Trusts §170, com. (a).

Trustees "are held to the highest amount of good faith, are required to exclude all selfish interest, are prohibited from putting themselves in positions where personal interest and representative interest will conflict . . .": 3 Bogert on Trusts and Trustees, p. 1506.

Illustrations are plentiful of cases where trustees, faced with situations in which their own interest conflicted with that of their beneficiaries, were held bound to act in the interest of the beneficiaries. Thus, where an executrix (whose duty is analogous to that of a trustee) held claims against a third person on her own behalf and on behalf of the estate, it was held that her paramount duty was to the estate, and if anything could be recovered from the third person, "it was her duty to appropriate such money so recovered to the trust which she was administering": Evans' Estate, 1 Pa. Superior Ct. 37, 39. A similar result was reached in In re McCracken's Estate, 13 Pa. Superior Ct. 201, where it was said at page 207:

". . . the law will not direct, nor will it permit, money paid into an estate upon account of the debts of an individual to be taken out, leaving the debts unpaid, in order that the individual claims of an executor or some other person may be made more secure." And in Raybold v. Raybold, 20 Pa. 308, it was said, at page 312:

". . . a trustee is not permitted to obtain any profit or advantage to himself in managing the concerns of the cestui que trust. 'In short', says Justice Story, 'it may be laid down as a general rule, that a trustee is bound not to do anything which can place him in a position inconsistent with the interests of the trust, or which have a tendency to interfere with his duty in discharging it': 1 *Equity Jurisprudence*, §322."

Multiplication of illustrations is unnecessary. As was said in 3 Bogert on Trusts & Trustees, p. 1559:

"The ways in which a fiduciary can take a position hostile to the trust and seek a private advantage are without number. In whatever form the disloyalty appears, equity penalizes it with the privilege in the cestui of obtaining a constructive trust of the advantage obtained by the wrongdoing trustee."

In the present case, it is plain that the Philadelphia Company did not fulfill its paramount duty to the beneficiaries of the trust, i. e., the bondholders. If it was possible to obtain any security, the company should have obtained additional security for the obligation which it held in trust, the mortgage debt, rather than for its own possible liability as guarantor. This was especially true here, since the security obtained was furniture situated in the very hotel property, the mortgage on which was the corpus of the trust. Our conclusion is strengthened by the surrounding factors in this case. The bill of sale was taken in connection with an application by the hotel company to the Philadelphia Company for a loan, and the concurrent execution of a new first mortgage on the same property which was the subject of the Turner mortgage. At the same time, and as part of the same transaction, the Philadelphia Company refunded to the hotel company the sum of $46,967.29 plus accumulated interest, which sum had theretofore been paid on account of the sinking fund under the Turner mortgage, and received class "A" bonds secured by the Pennington mortgage of the face value of $240,000 in lieu of cash in that amount on account of payments due to said sinking fund. The sum refunded to the hotel company was apparently paid into the settlement upon the Pennington mortgage for the benefit of the hotel company. As indicated by the stipulated facts, this transaction later resulted in a loss on the Pennington class "A" bonds taken in lieu of sinking fund payments.

We are not prepared, nor is it necessary at this time, to say that these actions of the Philadelphia Company constitute such a breach of trust as to warrant a surcharge upon it. It is obvious, however, that the receipt of the bill of sale by the Philadelphia Company from the hotel company was intimately connected with the other transactions involved in the execution of the Pennington mortgage, including the refund of the sinking fund payments to the hotel company. In addition, it may be noted that the Philadelphia Company received $56,097.92 on account of fees, guaranty premiums, etc., in connection with this transaction. In view of these facts, and of the high duty of loyalty imposed upon trustees, we must conclude that the trust property, that is the $46,967.29 plus interest, was used to acquire the bill of sale of the hotel furniture, or at least, was partly instrumental in accomplishing this purpose. This being so, the Philadelphia Company should not have retained the advantage of the bill of sale for its own interest, but should have appropriated it for the benefit of the trust.

"If the trustee uses trust property for his own purposes he is liable for any loss and accountable for any gain resulting from such use": Scott, "The Trustee's Duty of Loyalty", 49 Harvard Law Rev. 521, 565.

No more succinct statement of the duty of a trustee has been expressed than that by the late Justice Cardozo, who, as Chief Judge of the Court of Appeals of New York, said:

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of

particular exceptions. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court": Meinhard v. Salmon et al., 249 N. Y. 458, 464.

By this standard, the Philadelphia Company, or its successor, cannot be permitted to retain the bill of sale for its own interest. It must be added to the trust property, for the benefit of the bondholders who constitute the beneficiaries of the trust.

In accordance with the foregoing reasoning, therefore, plaintiff's petition is granted, and the following decree is entered:

## Decree

And now, to wit, June 26, 1939, Integrity Trust Company, successor trustee to Philadelphia Company for Guaranteeing Mortgages under indenture of mortgage dated April 1, 1922, secured upon Hotel Sylvania, having filed a petition for an order directing the prior trustee to turn over a certain bill of sale dated March 7, 1927, and answers having been filed thereto by the receivers of the Philadelphia Company for Guaranteeing Mortgages and by the Mortgage Service Company of Philadelphia, operating trustee, upon consideration thereof, after hearing duly held thereon, the court being fully advised in the premises, it is ordered, adjudged, and decreed:

1. The prayer of said petition of Integrity Trust Company, successor trustee, is hereby granted.

2. The Philadelphia Company for Guaranteeing Mortgages and its successor, Mortgage Service Company of Philadelphia, are hereby ordered and directed to set over and assign unto Integrity Trust Company, successor trustee, all right, title, and interest of said Philadelphia Company for Guaranteeing Mortgages and its successor, Mortgage Service Company of Philadelphia, under, in and to that certain bill of sale executed and delivered by Hotel Sylvania Company dated March 7, 1927, unto the Philadelphia Company for Guaranteeing Mortgages, a

copy of which bill of sale is attached to the stipulation of facts as exhibit no. 10.

3. Upon receipt of a proper assignment of said bill of sale by the successor trustee, said successor trustee shall take and hold same as successor trustee under said indenture of mortgage dated April 1, 1922, free and clear of any right, title, and interest of the Philadelphia Company for Guaranteeing Mortgages or Mortgage Service Company of Philadelphia, operating trustee.